IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TAJ ARMON REID,<br><br>Defendant. | Case No. 17-cr-00175-CRB-1<br><br>**ORDER STAYING MOTION FOR COMPASSIONATE RELEASE** |

Defendant Taj Reid is an inmate in the custody of the Bureau of Prisons (BOP) and was, until days ago, housed at Taft Correctional Institution (TCI) in Taft, California. TCI is closing forthwith, and Reid is one of hundreds of inmates in that facility being transferred to other BOP facilities. See Notice (dkt. 542) ("BOP anticipates [TCI] will be closed by April 30, 2020."). In fact, the government informs the Court that, since he filed his pro se motion, Reid has been transferred to a new facility (one which has no reported cases of COVID-19). See Opp'n (dkt. 545) at 2.

Reid is 49 years old, and is being treated for Valley Fever, which he contracted while in federal custody, as well as hypertension and high cholesterol. See Mot. (dkt. 541) at 29–30; Supp. Mot. Ex. A (dkt. 543-2) at 3. He is also a prostate cancer survivor. Id. Reid moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A) due to his heightened risk of becoming severely ill from COVID-19. See Mot.; Supp. Mot. (dkt. 543)[1]; Reply to Response (dkt. 546). His motion stated that he expected to be transferred to a new facility within the week, and was concerned about his safety at TCI, in transit, and

---

[1] What the Court refers to as Reid's supplemental motion is the brief Reid filed shortly after his initial, pro se motion, with the assistance of counsel.

at a new facility.  See Mot. at 2–3, 13.  The government opposes Reid's motion.  See Notice; Opp'n.  For the reasons provided below, the Court stays the motion until May 4, 2020.

## I. BACKGROUND

A jury found Reid guilty of conspiracy to receive a bribe and two counts of aiding and abetting the receipt of a bribe in connection with construction contracts.  See Jury Verdict (dkt. 171).  Reid also pled guilty to conspiracy to defraud.  See Plea (dkt. 180). For all of these offenses, the Court sentenced him to a term of 12 months in custody, to be followed by a term of three years of supervised release.  See Judgment (dkt. 431).  His 12-month term is set to expire on September 1, 2020.  See Supp. Mot. at 2.

On April 4, 2020, Reid petitioned the warden at Taft for relief in light of the COVID-19 pandemic.  See Mot. at 29–30 ("Inmate Request to Staff").  He requested two things.  First, he asked for immediate transfer to home confinement in light of the Attorney General's April 3, 2020 finding of emergency conditions within the BOP.  Id. at 29. Second, he referenced "extraordinary and compelling reasons," articulated why he believed he is "at an even greater risk than the 'average' inmate," and requested that the BOP bring a motion on his behalf for a modification of his imposed term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A).  Id.

On April 6, 2020, Reid received a Memorandum from D. Patrick, Executive Assistant/Grievance Coordinator, stating:

> This is in response to the multiple Requests to Staff (Cop-outs) which have been forwarded to my office for response.  Due to the number of Requests to Staff received, individual responses will not be provided, nor will any future requests regarding this same matter be addressed.
>
> Staff has not been provided guidance by the Bureau of Prisons (BOP) regarding the Attorney General's Memorandums involving any revised procedures for an inmate's placement on Home Confinement. Therefore current procedures will remain the same.
>
> Furthermore, due to the current decision by the Bureau of Prisons to close the facility and the subsequent transfer of all

2

>inmates, each of you will have to make this request at your new facility.

Id. at 38.  Reid did not appeal this response within the BOP system.

On April 13, 2020, Reid filed in this Court a pro se motion for compassionate release.  See generally id.[2]  Reid asserts that he has no history of disciplinary issues in custody, and that upon release he intends to reside at the apartment in Oakland, California where he resided while on pretrial release.  See Mot. at 30; Supp. Mot. at 2; PSR ¶ 3.

## II.    LEGAL STANDARD

18 U.S.C. § 3582(c) provides that a "court may not modify a term of imprisonment once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant."  A defendant may bring a § 3582(c) motion after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  "[A]fter considering" the sentencing factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable," a court may grant the motion to reduce the defendant's sentence in one of two circumstances, one of which is "if it finds that . . . extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Id. § 3582(c)(1)(A)(i).

## III.   DISCUSSION

This Court's analysis of Reid's compassionate release motion begins and—for now—ends with the issue of exhaustion.

---

[2] Of course, Reid cannot ask this Court to address his request to BOP that he be placed in home confinement.  See 18 U.S.C. § 3621(b) (the BOP is required to "designate the place of the prisoner's imprisonment."); United States v. Ceballos, 671 F.3d 852, 855 (9th Cir. 2011) ("While a [district court] judge has wide discretion in determining the length and type of sentence, the court has no jurisdiction to select the place where the sentence will be served.") (internal quotation marks omitted).  The government represents to the Court that review of Taft inmates' requests for home confinement is underway, and that Reid's request has not yet been reviewed.  See Opp'n at 4; Patrick Decl. ¶ 6.  There is no reason that Reid's transfer should moot his home confinement request, or prevent its review.

3

### A. Significance of the April 4 Request

As an initial matter, the government disputes that Reid's April 4 request was truly a request for compassionate release. It relies on Dale Patrick, who asserts that TCI did not interpret Reid's request (or, shockingly, any of the 150 requests it received from inmates) as a request for compassionate release. See Opp'n at 7–8 (citing Patrick Decl. (dkt. 545-1) ¶ 8). But Patrick's April 6 Memorandum said nothing about inmates' failure to comply with 28 C.F.R. § 571.61; instead, it referenced an "influx" of requests. See Mot. at 38 ("Influx of Inmate Requests to Staff"; "Due to the number of Requests to Staff received . . ."). The Court cannot speak to the other 149 requests that constituted the "influx" of requests. But given the content of Reid's request, the Court rejects Patrick's assertion out of hand. Reid's request specifically cited 18 U.S.C. § 3582. See Mot. at 29. To not construe it as a request for compassionate release requires willful blindness. Accordingly, "the receipt of . . . a [compassionate release] request by the warden of the defendant's facility" in this case was April 4, 2020. See id.; 18 U.S.C. § 3582(c)(1)(A).[3]

The government next argues that even if Reid's April 4 request was a valid request for compassionate release, Patrick's April 6 Memorandum was not a "blanket denial." See Opp'n at 7 (citing Patrick Decl. ¶ 4 ("This Memorandum was not a blanket denial.")). Of course it was. Telling Reid that the prison would not consider his request—that "individual responses will not be provided, nor will any future requests regarding this same matter be addressed," see Mot. at 38—is a denial of Reid's request, whether or not it is called that. It tells Reid that he has reached the end of the road for his request at TCI.[4]

---

[3] Nor—though the government does not assert this—is Reid's April 4 request mooted by his subsequent transfer. Requiring Reid to make a new request in his new facility, as the April 6 Memorandum instructs, thus restarting the 30-day clock, is particularly unacceptable given the emergency nature of the filing and the fact that Reid's motion raises as a reason for his release the increased risk of contracting COVID-19 he would face during transfer to the new facility. See, e.g., Mot. at 13.

[4] Incidentally, the government adds in its opposition brief that later that same day, TCI received direction from BOP about home confinement protocols, and so "the memorandum was immediately taken down" and "Taft began the required procedures" for evaluating inmates for home confinement. Opp'n at 7 (citing Patrick Decl. at ¶ 5). This is irrelevant to the present motion. Beginning the process as to home confinement does not equate to evaluating inmates' compassionate release requests. Nor does it appear that inmates were ever informed that their requests for home confinement were now being considered. See

4

### B. Exhaustion of April 4 Request

Reid made a valid request for compassionate release on April 4, and the warden denied that request by way of the April 6 Memorandum. Even so, the Court agrees with the government that Reid has not yet exhausted his administrative remedies. See Opp'n at 8 ("Until 30 days have elapsed, or until Reid has fully exhausted remedies within BOP, this Court lacks authority to grant relief."). Reid's request will be exhausted when either he has appealed his request all the way through the BOP system, see id. at 7 (noting two additional levels of appeal after the warden: first to the Regional Director and then to the BOP General Counsel) (citing 28 C.F.R. § 542.15(a)); but see Mot. at 8 (arguing that this would take 8–12 months), or when 30 days have elapsed from the receipt of his request to the warden. See 18 U.S.C. § 3582(c)(1)(A).

Reid acknowledges that he has not appealed his request to additional levels within the BOP, but responds: "Of course not; the April 6, 2020 Memorandum let him know he would not receive a response." Reply to Response at 4. The Court does not read the April 6 Memorandum as foreclosing any appellate remedies within BOP, but rather any further engagement from TCI. See Mot. at 38 ("my office"). Indeed, the Court would be surprised if it was within D. Patrick's power to eviscerate the appellate process provided in 28 C.F.R. § 542.15(a). Nor has 30 days elapsed: Reid submitted his request on April 4, and he filed his motion with this Court on April 13.

Reid asks the Court to waive the exhaustion requirement, see Mot. at 6, or to deem it futile, see Supp. Mot. at 7 (citing Terrell v. Brewer, 935 F.2d 1015, 1019 (9th Cir. 1991)), or to deem administrative remedies unavailable, see Reply to Response at 3–4. But the Court cannot do so, even in light of the pandemic and even in light of TCI's conduct. The Supreme Court has stated that "[w]here Congress specifically mandates, exhaustion is required." McCarthy v. Madigan, 503 U.S. 140, 144 (1992), superseded by statute on other grounds as stated in Booth v. Churner, 532 U.S. 731, 740–41 (2001); see also Booth, 532 U.S. at 741 n.6 ("we will not read futility or other exceptions into statutory

---

Reply to Response at 2 (no new memorandum).

5

exhaustion requirements where Congress has provided otherwise."). The authority that Reid relies on to the contrary is distinguishable.[5]

Section 3582 provides in pertinent part that a "court may not modify a term of imprisonment once it has been imposed" except upon a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." See 28 U.S.C. § 3582(c)(1)(A). Exhaustion is therefore required by the statute. The Court cannot forgive the failure to exhaust, and without exhaustion, the Court lacks jurisdiction over the motion.

## IV.   CONCLUSION

For the foregoing reasons, the Court STAYS Reid's motion. The Court will act on Reid's petition once it has jurisdiction to do so, on May 4, 2020. In the interim, Reid may supplement the record with additional evidence of his underlying conditions, particularly the severity of his Valley Fever, if he wishes to do so,[6] and the government is directed to inform the Court, within 24 hours, of any reported COVID-19 cases at Reid's new institution. The parties shall also inform the Court immediately if the BOP acts on Reid's

---

[5] Terrell did not involve a statutorily-mandated exhaustion requirement. The Circuit there first joined with other circuits in concluding that "a federal prisoner seeking both damages and injunctive relief cannot bring a Bivens action until he or she has first exhausted any available administrative remedies," then recognized exceptions to that requirement. 935 F.2d at 1019. Washington v. Barr, 925 F.3d 109 (2d Cir. 2019), which Reid cites in support of his argument that exhaustion is not absolute, see Supp. Mot. at 9, likewise did not involve a statutorily-mandated exhaustion requirement. Washington even noted that "the CSA does not expressly mandate the exhaustion of administrative remedies." 925 F.3d at 115. Nor does the Court agree with the analysis in United States v. Perez, No. 17 CR 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. Apr. 1, 2020), also cited by Reid, see Supp. Mot. at 9, which relies on Washington in the context of 18 U.S.C. § 3582(c). Moreover, Ross v. Blake, 136 S. Ct. 1850, 1856–59 (2016), which Reid relies on, see Reply to Response at 3–4, explained that "a statutory exhaustion provision stands on a different footing" than "judge-made exhaustion doctrines," and so courts "may not excuse a failure to exhaust." The Court was able to examine the availability of administrative remedies in that case only because the statute at issue, the PLRA, explicitly contained "its own, textual exception to mandatory exhaustion" pertaining to availability. See Ross, 136 S. Ct. at 1858.
[6] The government acknowledges only that Reid "recently sought medical attention for a fungal infection" and received medication. Opp'n at 1–2.

request for home confinement.

Finally, the Court cannot help but observe that the process Reid (and perhaps 150 others) experienced in seeking compassionate release involved precisely the kind of delay and frustration the First Step Act was intended to ameliorate. "'Prior to the passage of the First Step Act, only the Director of the [BOP] could file a motion for compassionate release, and that very rarely happened.'" United States v. Shields, No. 12-CR-00410-BLF-1, 2019 WL 2359231, at *1 (N.D. Cal. June 4, 2019) (emphasis added) (quoting United States v. Gutierrez, No. CR 05-0217 RB, 2019 WL 1472320, at *1 (D.N.M. Apr. 3, 2019)); see also Christie Thompson, "Frail, Old and Dying, but Their Only Way Out of Prison is a Coffin," N.Y. Times (March 7, 2018) (". . . despite urging from lawmakers of both parties, numerous advocacy groups and even the Bureau of Prisons' own watchdog, prison officials use [compassionate release] only sparingly. Officials deny or delay the vast majority of requests. . . ."). The First Step Act stemmed in part from bipartisan agreement over the need to improve accountability surrounding BOP's use of compassionate release. See Shon Hopwood, "The Effort to Reform the Federal Criminal Justice System," 128 Yale L.J.F. 791, 794–957 (Feb. 25, 2019). Section 603(b) of the First Step Act modified 18 U.S.C. § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release." Pub. L. No. 115-391, 132 Stat. 5194, at *5239 (capitalization omitted). Despite these reforms, Reid and others were subject to a game of whack-a-mole: having filed requests, they were told that no one would review them, that they should file new requests in their new institutions, and now that their requests were not valid in the first place, and that the prison was already reviewing their requests, but only in part, and without having told them so. Sick inmates deserve better.

**IT IS SO ORDERED.**

Dated: April 18, 2020

CHARLES R. BREYER
United States District Judge