United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

TAJ ARMON REID,

    Defendant.

Case No. 17-cr-00175-CRB-2

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

Defendant Taj Reid, an inmate in the custody of the Bureau of Prisons (BOP), is seeking compassionate release.  See Mot. (dkt. 541); Supp. Mot. (dkt. 543).  Reid's motion is based on his heightened risk of becoming severely ill from COVID-19 in light of multiple underlying conditions: he is being treated for Valley Fever, which he contracted while in federal custody, and he has hypertension and high cholesterol.  See Mot. at 29–30; Supp. Mot. Ex. A (dkt. 543-2) at 3.  He is also a prostate cancer survivor.  Id.  The government opposes Reid's motion.  See Notice (dkt. 542); Opp'n (dkt. 545).  On April 18, 2020, the Court stayed Reid's motion, holding that Reid had not met 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement, and would not do so until May 4, 2020, at which point the Court would have jurisdiction over the matter.  See Order Staying Motion (dkt. 547).

While the motion was stayed, the government filed two status reports.  The first informed the Court that the BOP had preliminarily approved Reid for home confinement, and the second, three days later, informed the Court that, notwithstanding that preliminary approval, BOP cannot designate Reid for home confinement because the Residential

United States District Court
Northern District of California

1  Reentry Center for Oakland, California, experienced a positive case of COVID-19 and

2  "cannot continue normal operations."  See Status Report (dkt. 550); Second Status Report

3  (dkt. 553).[1]  Reid also filed a Response, further arguing that he complied with the BOP's

4  procedures for requesting compassionate release (a position with which the Court

5  continues to agree, see Order Staying Motion at 4), expressing concern about quarantining

6  at the BOP for fear that the 14-day period could be restarted every time an inmate tests

7  positive, and providing further information about his medical conditions.  See Response

8  (dkt. 552).

9  Having carefully reviewed all of the materials the parties submitted, the Court

10  concludes that Reid has satisfied the requirements of 18 U.S.C. § 3582(c)(1)(A) and the

11  applicable Sentencing Commission policy statement.  His motion for compassionate

12  release is therefore granted.

13  18 U.S.C. § 3582(c) provides that a "court may not modify a term of imprisonment

14  once it has been imposed except . . . upon motion of the Director of the Bureau of Prisons,

15  or upon motion of the defendant."  A defendant may bring a § 3582(c) motion after he has

16  "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons" to

17  bring the motion on his behalf, or after "the lapse of 30 days from the receipt of such a

18  request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C.

19  § 3582(c)(1)(A).

20  "[A]fter considering" the sentencing factors from 18 U.S.C. § 3553(a) "to the extent

21  that they are applicable," a court may grant the motion to reduce the defendant's sentence

22  in one of two circumstances.  First, "if it finds that . . . extraordinary and compelling

23  reasons warrant such a reduction."  Id. § 3582(c)(1)(A)(i).  Second, if the defendant is at

24  least 70 years of age, and meets other conditions not applicable here.  See id.

25  § 3582(c)(1)(A)(ii).

26

27  [1] Reid simultaneously sought both compassionate release from the Court and home confinement
28  from the BOP.  See Mot. at 29–30 ("Inmate Request to Staff"); Supp. Mot. at 2; Order Staying
    Motion at 2.

A reduction in sentence under § 3582(c) must be "consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A); see also Dillon v. United States, 560 U.S. 817, 819 (2010) (holding that the Sentencing Commission policy statement applicable to 18 U.S.C. § 3582(c)(2) remains mandatory, even after United States v. Booker, 543 U.S. 220 (2005)). Although the statute does not define the term "extraordinary and compelling reasons," the Sentencing Commission has. The application notes to U.S.S.G. § 1B1.3 enumerate five circumstances that establish "extraordinary and compelling reasons" to reduce a defendant's sentence.

The first two relate to the defendant's medical condition. The "extraordinary and compelling reasons" standard is satisfied if "[t]he defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)." U.S.S.G. § 1B1.13 cmt. n.1(A)(i). It is also satisfied by "a serious physical or medical condition, . . . serious functional or cognitive impairment, or . . . deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." Id. § 1B1.13 cmt. n.1(A)(ii). The defendant's age qualifies as a third extraordinary and compelling reason if "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." Id. § 1B1.13 cmt. n.1(B). Family circumstances requiring the defendant to care for minor children or a spouse or registered partner are a fourth qualifying reason. Id. § 1B1.13 cmt. n.1(C). Fifth, a catch-all provides for relief if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. § 1B1.13 cmt. n.1(D).

Reid has satisfied these requirements. First, he has exhausted his administrative remedies because more than thirty days have now lapsed since he, on April 4, 2020, petitioned the warden at Taft for relief in light of the COVID-19 pandemic. See Mot. at

United States District Court
Northern District of California

1  29–30 ("Inmate Request to Staff"); Order Staying Motion at 6.

2    Second, the Court has considered the applicable sentencing factors from 18 U.S.C.

3  § 3553(a) and finds that they are consistent with granting Reid's motion for compassionate

4  release.  A jury found Reid guilty of conspiracy to receive a bribe and two counts of aiding

5  and abetting the receipt of a bribe in connection with construction contracts.  See Jury

6  Verdict (dkt. 171).  Reid also pled guilty to conspiracy to defraud.  See Plea (dkt. 180).

7  For all of these offenses, the Court sentenced him to a term of 12 months in custody, to be

8  followed by a term of three years of supervised release.  See Judgment (dkt. 431).  His 12-

9  month term is set to expire on September 1, 2020.  See Supp. Mot. at 2.  Early release is

10  not inconsistent with "the nature and circumstances of the offense and the history and

11  characteristics of the defendant," providing just punishment and adequate deterrence, the

12  applicable sentencing range and policy statements of the Sentencing Commission, and the

13  need to avoid unwarranted sentencing disparities.  See 18 U.S.C. § 3553(a).  Because Reid

14  is a non-violent offender, with no criminal history, and has had "no history of disciplinary

15  issues in custody," Supp Mot. at 2, 6, early release is consistent with "protect[ing] the

16  public from further crimes of the defendant."  See 18 U.S.C. § 3553(a)(2)(C).  In addition,

17  the "need . . . to provide the defendant with needed . . . medical care . . . in the most

18  effective manner" weighs in favor of early release.  See 18 U.S.C. § 3553(a)(2)(D).

19    Third, "extraordinary and compelling reasons," as defined by the applicable

20  Sentencing Commission policy statement, "warrant . . . a reduction."  See 18 U.S.C.

21  § 3582(c)(1)(A)(i).  Reid suffers from a number of "serious physical or medical

22  condition[s]," including hypertension and high cholesterol, from which he "is not expected

23  to recover," per U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).  See Mot. at 29–30;  Supp. Mot. Ex. A

24  at 3;  Woodson Decl. (dkt. 552-1) ¶¶ 8–10, Exs. C–E.  He is prone to heart disease due to

25  his hypertension and high cholesterol.  Supp. Mot. at 4.  Moreover, the CDC reports that

26  there is a 6% mortality rate for COVID-19 patients with hypertension, compared with a

27  0.9% fatality rate for patients without any underlying condition.  See Interim Clinical

28  Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19),

Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited May 5, 2020).  Though it is unclear whether and when Reid could expect to recover from his Valley Fever, the seriousness of that condition is not lost on the Court, and there is no indication that Reid would recover by September 1.  Valley Fever causes lung infection and, in 40–50% of cases where patients seek treatment, results in acute pneumonia.  Supp. Mot. at 4 (citing Kern County Public Health Services, https://bit.ly/2XHa9XV, last visited on May 5, 2020); see also Valley Fever (Coccidioidomycosis) Risk & Prevention, Centers for Disease Control and Prevention, https://www.cdc.gov/fungal/diseases/coccidioidomycosis/risk-prevention.html (last visited May 5, 2020) ("People who are Black" may be at higher risk for developing severe forms of Valley Fever).  Chronic lung disease increases a person's risk of getting severely ill from COVID-19.  See People Who are at Higher Risk For Illness, Coronavirus Disease 2019-Covid-19, Centers for Disease Control and Protection, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 5, 2020) (hereinafter "People Who are at Higher Risk").  Indeed, patients with chronic lung disease make up 21% of ICU-hospitalized COVID-19 patients and make up only 7% of COVID-19 patients who did not require hospitalization.  See CDC Covid-19 Response Team, Preliminary Estimates of the Prevalence of Selected Underlying Health Conditions Among Patients with Coronavirus Disease 2019 — United States, February 12–March 28, 2020 at 384, Table 1, https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6913e2-H.pdf (last visited May 5, 2020) (hereinafter "Preliminary Estimates").

In the context of the COVID-19 pandemic, Reid's medical conditions, which render him uniquely vulnerable to serious illness if he contracts COVID-19, see Preliminary Estimates at 382 ("percentage of COVID-19 patients with at least one underlying health condition . . . was higher among those requiring [ICU] admission"—78%— "than that among those who were not hospitalized"—27%); People Who are at Higher Risk ("people of any age who have serious underlying medical conditions might be at higher risk for

severe illness from COVID-19"), "substantially diminish[ ]" his ability "to provide self-care within the environment of a correctional facility."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii); see also United States v. Perez, 17 Cr. 513-3 (AT), 2020 WL 1546422, at *4 (S.D.N.Y. Apr. 1, 2020) ("Confined to a small cell where social distancing is impossible, [Reid] cannot provide self-care because he cannot protect himself from the spread of a dangerous and highly contagious virus.").

For the foregoing reasons, Reid's motion for compassionate release is granted. Reid's sentence of imprisonment is modified to time served.  However, as the government has requested, see Second Status Report at 2, the remaining portion of the original term of imprisonment (as calculated by the BOP) shall be served as supervised release with the special condition that Reid shall be subject to home confinement, followed by the three-year term of supervised release imposed in the original sentence.  See Judgment.  Because Reid has been in quarantine since his transfer on April 17, 2020, the government advises that a further quarantine is not necessary.  See Second Status Report at 1–2.  The BOP is therefore directed to release Reid forthwith.  The government shall serve a copy of this order on the Warden at FCI Mendota immediately.

**IT IS SO ORDERED.**

Dated: May 5, 2020

_____
CHARLES R. BREYER
United States District Judge